UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBERTA COLES, <br><br> Plaintiff, <br><br> v. <br><br> ENVOY OF GOOCHLAND, LLC <br> 800 Concourse Parkway South <br> Maitland, FL 32751 <br>     <u>Serve</u>: Corporation Service <br>         Company, Reg. Agent <br>         100 Shockoe Slip, Floor 2 <br>         Richmond, VA 23219 <br>         (City of Richmond) <br><br> ENVOY HEALTH CARE, LLC <br> 800 Concourse Parkway South <br> Maitland, FL 32751 <br>     <u>Serve</u>: Corporation Service <br>         Company, Reg. Agent <br>         100 Shockoe Slip, Floor 2 <br>         Richmond, VA 23219, <br>         (City of Richmond) <br><br> CONSULATE MANAGEMENT <br> COMPANY III, LLC <br> 181 Concord Lake Road <br> Kannapolis, NC 28083 <br>     <u>Serve</u>: Corporation Service <br>         Company, Reg. Agent <br>         100 Shockoe Slip, Floor 2 <br>         Richmond, VA 23219 <br>         (City of Richmond) <br><br>     Defendants. | Civil Action No. 3:21cv00691 <br><br> <u>JURY DEMANDED</u> |

## **COMPLAINT**
**Disability Discrimination, Failure to Accommodate, and Retaliation in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B).**

1

Plaintiff Roberta Coles, by and through her attorneys, brings this action against Envoy of Goochland, LLC ("Envoy"), Envoy Health Care, LLC ("Envoy Health Care"), and Consulate Management Company III, LLC ("Consulate"), together, "Defendants," for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B), and in support of her Complaint states as follows:

## INTRODUCTION

When Roberta Coles, a Business Office Manager at Envoy, a nursing home facility, experienced a severe asthma flare-up in March 2020, her doctor recommended she telework because she was at high risk of contracting serious illness due to COVID-19. Although Defendants permitted other Business Office Managers to work remotely, Ms. Coles' supervisor Jonathan Terrell was dismissive of her health condition and denied her request to telework, without engaging in an interactive process regarding her request for accommodation. When Ms. Coles later became acutely ill and her medical provider sent multiple notes indicating that she should not physically go to work due to her health condition, Defendants required Ms. Coles to physically appear in the workplace to participate in a teleconference that she could have just as readily attended from a remote location. On the day Ms. Coles' doctor recommended she be reevaluated to assess what accommodation would allow her to work safely, Mr. Terrell notified Ms. Coles that she was terminated, effective immediately. In providing his reasons, he explained, "It sounds like you have a lot going on with your asthma, so you might not be a good fit for this role." Defendants failed to accommodate Ms. Coles and discriminated and retaliated against Ms. Coles because of her disability and requests for reasonable accommodations in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B).

## PARTIES

1. Plaintiff Roberta Coles is an adult female resident of Virginia.

2. Defendant Envoy of Goochland, LLC, d/b/a/ Envoy at the Meadows, is a 120-bed nursing home facility registered to do business, and in good standing, in the Commonwealth of Virginia.

3. Defendant Envoy Health Care, LLC is a limited liability company that owns Envoy at the Meadows, registered to do business, and in good standing, in the Commonwealth of Virginia.

4. Defendant Consulate Management Company III, LLC d/b/a Consulate Health Care ("Consulate") is a corporation and provider of senior health care services registered to do business, and in good standing, in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B).

6. Venue properly lies in this Court pursuant to 42 U.S.C. § 1391 (b) and (c) because the acts or omissions giving rise to these claims occurred in Virginia and Defendants transact business in Goochland, Virginia.

7. On September 25, 2020, Ms. Coles submitted a formal complaint of discrimination with the EEOC, asserting claims of discrimination based on her disability (asthma), failure to accommodate, and retaliation against Defendants.

8. On August 4, 2021, the EEOC issued to Ms. Coles a Notice of Right to Sue.

9. Less than 90 days have elapsed since the EEOC issued its Notice of Right to Sue.

10. Ms. Coles exhausted her administrative remedies.

**FACTS GIVING RISE TO RELIEF**

11. Ms. Coles worked as a Business Office Manager (BOM) at Envoy from November 2019 until she was terminated in April 2020.

12. Jonathan Terrell, Executive Director of Envoy, was Ms. Coles supervisor and is an agent of Defendants.

13. Ms. Coles suffers from chronic asthma. She manages her asthma through use of a nebulizer, which delivers medication in a mist that is inhaled, and other treatments recommended by her medical provider. When her asthma symptoms are active, Ms. Coles experiences difficulty breathing, wheezing, severe cough, and shortness of breath, and often requires rest to avoid further difficulty breathing.

14. With medication and management of her asthma symptoms, Ms. Coles is able to perform the functions of her job without need for further accommodation.

15. In March 2020, the Centers for Disease Control and Prevention advised that individuals with moderate to severe asthma were at elevated risk of severe illness if exposed to COVID-19.

16. In March 2020, Mr. Terrell informed employees that due to the emergence of COVID-19, employees were prohibited from bringing personal items into the facility.

17. In March 2020, Ms. Coles experienced symptoms of a serious asthma flare-up, including painful chest tightness, wheezing, and coughing.

18. On or around March 16, 2020, Ms. Coles asked Mr. Terrell if she could bring her nebulizer to her office. Ms. Coles explained that she was experiencing acute symptoms from her asthma, and that using the nebulizer at work would enable her to continue working while also managing her symptoms. Mr. Terrell refused her request for accommodation and did not suggest

any alternate accommodations.  Mr. Terrell explained that he was refusing because "We don't want to scare anybody," even though Ms. Coles had a private office in which she could use the nebulizer.

19. Four days later, on March 20, 2020, Ms. Coles met with Mr. Terrell and Ms. Morris to discuss the division of responsibilities between Ms. Coles and Mr. Terrell.  Mr. Terrell presented a document with the title Quality Improvement Action Plan and explained that it was simply designed to make clear her duties and to clearly delineate her tasks and how they would fit together with Mr. Terrell's work.

20. Concerned that the document could provide the inaccurate impression that inaccurately implied that she was not meeting her performance goals, Ms. Coles asked Mr. Terrell on March 25, 2020 about how she was performing.  Mr. Terrell responded that Ms. Coles was "doing fine" and that he had "no problems" with her performance.

21. Ms. Coles continued to experience asthma symptoms through the month of March 2020, during a time that the number of COVID-19 cases was increasing very rapidly among the population.

22. Also in March 2020, Ms. Coles was informed by her doctor that her active asthma symptoms put her at risk of serious adverse health impacts due to the spread of COVID-19.

23. After Ms. Coles' symptoms persisted, she received doctor's orders to work from home due to worsening symptoms and the risks associated with COVID-19, pending a reevaluation on April 14, 2020.  On April 2, Ms. Coles' medical provider faxed two notes to the Defendants reflecting the doctor's recommendation and explanation regarding Ms. Coles' health needs.  In one note, the provider explained that Ms. Coles is high-risk of COVID-19 due to her asthma.  In

the other, the provider advised that Ms. Coles work remotely from April 2 to April 14, after which a reevaluation would determine whether she could return to working in the office.

24. Also on April 2, Ms. Coles emailed the notes to Mr. Terrell, Human Resources Manager Tina Lowry, Regional Business Office Manager Jetanna Morris, and Travel Business Office Manager Diane Rankin. Ms. Morris responded that other Business Office Managers worked remotely. Ms. Lowry, however, rejected Ms. Coles' request for accommodations, asking, "What is it your provider thinks you can do from home? That's not going to be an accommodation we can provide."

25. None of the managers suggested any alternative accommodations or suggested that they discuss the matter further; rather, accommodations were denied completely. Consequently, Ms. Coles had no choice but to work the next day.

26. While in the office on April 2, Ms. Coles notified Mr. Terrell that she was experiencing significant exacerbation of her asthma condition, and asked permission to go home. Although she notified Mr. Terrell by email and attempted to contact him a number of times with a plea for her health, he did not respond to her requests. Ms. Coles contacted Human Resources for help, however Ms. Lowry told Ms. Coles that she must follow Mr. Terrell's instructions.

27. After Ms. Coles clocked out at 5:00 p.m., Mr. Terrell asked to speak with her, which caused her to remain at the facility well past the time her workday ended. Mr. Terrell was visibly frustrated and upset, and told Ms. Coles that she did not appear to be suffering from asthma. Mr. Terrell told Ms. Coles that he felt her medical provider recommended telework only because nursing homes were being "attacked" as COVID-19 hotspots as the pandemic worsened. Ms. Coles assured him this was not the case.

28. Additionally, Mr. Terrell told her that the facility nurse, who apparently had reviewed Ms. Coles' medical information without her permission, thought that her asthma prescription should begin working soon after administration. Mr. Terrell stated that he agreed, and that he did not understand why Ms. Coles needed to work from home for 12 or more days.

29. The facility nurse had no role in Ms. Coles' request for an accommodation; she is not a supervisor, has no HR function, and does not evaluate employees' medical conditions.

30. Mr. Terrell's actions amounted to an unauthorized disclosure of her confidential medical information to someone without a need-to-know.

31. Mr. Terrell told Ms. Coles that she could not work from home and he expected her to be in the office for a conference call on April 3. He did not provide any explanation as to why she was required to come to the office for a teleconference, when she could have participated in the teleconference from any location with a telephone. In response to Ms. Coles' statement that she was concerned about risks to her health, Mr. Terrell laughed. Mr. Terrell said the ball was in her court and stated that following her doctor's medical advice was not worth the risk of termination. He warned Ms. Coles, "If I were you, I'd return to work in the morning."

32. Throughout this exchange and all their exchanges, Mr. Terrell did not raise the possibility of any alternate accommodations to address Ms. Coles' health condition and did not suggest that she meet with anyone else to discuss possible alternative accommodations.

33. Ms. Coles' medical provider faxed another note to Defendants on April 3, reiterating that Ms. Coles could not work and should be permitted to work remotely until a reevaluation on April 14.

34. Having received no permission for telework, Ms. Coles worked in the office on April 3. When she arrived at the office, a nurse named Crystal gave her a copy of a doctor's note

dated April 3, 2020, and told her that two copies of the note had gone through to the printer in the nurses' station. Crystal told Ms. Coles that she gave the second copy to Jetanna Morris.

35. At the office, coworkers asked her why she was in the office when she had requested to work from home due to her increased risks because of her health condition and COVID-19, apparently having learned of her requests. Ms. Coles, however, had not previously shared her requests for accommodation due to her medical condition with her coworkers, and had not authorized release of the information.

36. When Ms. Coles renewed her request to Mr. Terrell on April 3 for telework as a reasonable accommodation, he proclaimed that her health was fine and that she did not need to work from home. Ms. Coles restated that her medical provider had recommended that she not go to the office, and explained the risks to her health. Ms. Coles also explained that she was experiencing adverse health because of her asthma condition – worse that the day before – and needed to go home. With the doctor's note in her hand, Ms. Coles told Mr. Terrell that she planned to listen to her doctor's recommendation going forward and that she would not return to the office before her doctor approved it. In response, Mr. Terrell refused her request, and stated that her presence was necessary to train the receptionist and newly-hired Admissions Coordinator on minor issues, such as where certain documents were kept and how to process checks.

37. Also on April 3, Ms. Coles reiterated her request for accommodations with Mr. Terrell and Ms. Morris. Ms. Morris was receptive to Ms. Coles' accommodations request, stating, "We can accommodate her." Mr. Terrell, however, responded, "What can she do from home? She can't print documents." Ms. Morris then deferred to Mr. Terrell, and they ended the conversation without approval of telework or discussion of alternative accommodations.

38. On Monday, April 6, in light of how she was feeling, her doctor's recommendations, and her discussions with Mr. Terrell, she determined that it would be too risky to go to work. She attempted to contact Mr. Terrell to ensure he was aware of her situation, to ask if she could work remotely, or alternatively, to call in sick and utilize her available PTO. He did not answer.

39. Ms. Coles called Mr. Terrell again on Tuesday, April 7, to discuss working from home, but he did not answer. Ms. Coles texted Mr. Terrell and his assistant, Kelly Durrbeck, reminding them that she was staying home per her doctor's instructions. She also faxed her previous doctor's note to the office. She received no response.

40. On Wednesday, April 8, Ms. Coles' medical provider faxed another note regarding her health condition.

41. Defendants permitted Business Office Managers to telework, and arranged for Business Office Managers and other employees to have remote access to Defendants' network in order to facilitate working from home. Unlike those individuals, however, Defendants did not permit Ms. Coles to telework, and did make arrangements to permit her to work remotely from home.

42. On April 10, 2020, Mr. Terrell asked Ms. Coles when she planned to return to the office. Ms. Coles responded that she planned to follow her doctor's advice to return following a re-evaluation of her medical condition on April 14, as required by her doctor. Ms. Coles reiterated her request to telework in the interim and Mr. Terrell said nothing.

43. On April 13, 2020, Mr. Terrell asked Ms. Coles whether she planned to ask her doctor if she could return to working from the office. Ms. Coles reminded Mr. Terrell that her

reevaluation was scheduled for April 14 and that she needed to first hear from her doctor in light of her ongoing asthma symptoms.

44. Mr. Terrell informed Ms. Coles that he was terminating her that day because of her health condition. In particular, he stated, "It sounds like you have a lot going on with your asthma, and the doctor might not let you return to the office after the reevaluation, so you might not be a good fit for this role. It's best if I go ahead and let you go today." Mr. Terrell told Ms. Coles the termination was effective immediately.

45. Ms. Coles asked Mr. Terrell to put his reason for the termination in writing. Over a week later, on April 21, Ms. Coles received Defendant Consulate Health Care's notice of corrective action, indicating that Defendants were terminating her for a different reason, and backdating the form to April 13. In particular, the form reflected that Ms. Coles was being terminated due to "willful negligence in performance of assigned duties," which was never mentioned or alluded to in the conversation.

46. Ms. Coles had available Paid Time Off (PTO) time when Defendants fired her. Ms. Coles expected to be working remotely, but Defendants did not take any steps to enable her to do so. Ms. Coles could have and expected to utilize her PTO for the days she was not working, which was only because Defendants did not allow her to work remotely.

47. Defendant Consulate Health Care's website lists Envoy at the Meadows as a "proud member of the Consulate Health Care family." Envoy at the Meadows does not have a website separate from the Consulate Health Care website.

48. Defendant Consulate Health Care further states on its website, "we've grown to become the sixth-largest provider in the nation."

49. Defendant Consulate Health Care advertises job openings at Envoy and invites applicants to apply through the Consulate Health Care website. The position descriptions reference Consulate Health Care. An advertisement for a "Licensed Practical Nurse" at Envoy at the Meadows states, "At Consulate Health Care, we appreciate our employees and reward them for working hard."

50. Defendant Consulate's website states, "[O]ur employees care for patients like family, not because it's their job, but because it's their calling."

51. Defendant Consulate maintains common policies for all of its employees in all facilities. Consulate's Code of Ethics "sets forth the standards for ethical, legal, and professional conduct that is expected of all employees[.]" "The ethical behavior outlined in the Code applies not only to [employees'] time at work, but may also apply to [employees'] behavior outside the workplace if it reflects on the company."

52. Defendant Consulate's directory of offices lists contact information for Envoy at the Meadows, including Plaintiff's direct supervisor, Jonathan Terrell.

53. Plaintiff received informational materials about the Revenue Cycle Management Team with Defendant Consulate's logo and name at the top of each page. The materials state, "The Revenue Cycle Management Team is responsible for managing the billing and collection functions for Consulate Health Care, including development of policies, procedures and implementation of best practices across the company."

54. Plaintiff's work email address was roberta.coles@consulatehc.com. Her coworkers' emails also ended with "@consulatehc.com."

55. To access Defendants' remote desktop, employees were instructed to go to citrix.consulatehc.com.

56. Defendants posted on social media regarding COVID-19 precautions at the Envoy facility as "Envoy at The Meadows – Consulate Health."

57. Defendant Consulate provided the Employee Corrective Action Form received by Plaintiff on April 21, 2020.

## COUNT I
### Disability Discrimination in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12102(1), 12112(a).

58. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as if set forth here in full.

59. Plaintiff has a disability as defined by the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12102(1).

60. Plaintiff would have been able to perform the essential functions of her job with or without reasonable accommodations.

61. On account of her disability, Defendant discriminated against Plaintiff in the terms and conditions of her employment when it discharged her because of her disability.

62. Defendant offered false and pretextual reasons for its actions.

63. Defendant violated the ADA in discriminating against Plaintiff because of her disability. *See* 42 U.S.C. §§ 12102(1), 12112(a).

64. As a direct and proximate result of the Defendant's discriminatory actions, Ms. Coles suffered and in some circumstances continues to suffer lost wages and benefits, reputational harm, increased medical costs, emotional distress, and physical pain and discomfort.

## COUNT II
### Failure to Accommodate in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(b)(5)(A), 12112(b)(5)(B).

65. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as if set forth here in full.

66. Plaintiff is disabled as defined by the ADA, 42 U.S.C. § 12102(1).

67. Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

68. Defendant refused to engage in the interactive process regarding reasonable accommodations for Plaintiff's disability.

69. Defendant denied Plaintiff reasonable accommodations recommended by Plaintiff's treating physicians.

70. Defendant refused to offer alternative or effective accommodations for Plaintiff's condition.

71. Defendant did not explain the reasons Ms. Coles' request to work remotely was denied or the reasons it could not be seriously entertained.

72. Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. §§ 12112(b)(5)(A), 12112(b)(5)(B).

73. As a direct and proximate result of Defendant's failure to accommodate Plaintiff's disability, Plaintiff suffered and in some circumstances continues to suffer lost wages and benefits, reputational harm, increased medical costs, emotional distress, and physical pain and discomfort.

## COUNT III
### Retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(b)(5)(B), 12203(a).

74. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint as if set forth here in full.

75. Plaintiff engaged in protected EEO activity when she requested reasonable accommodations because of her disability.

76. Defendant was aware of Plaintiff's protected activity because she directed her request for a reasonable accommodation to her supervisor and HR.

77. On account of her protected activity, Defendant discriminated against Plaintiff in the terms and conditions of her employment by terminating her.

78. Defendant offered false and pretextual reasons for its retaliatory termination.

79. Defendant violated the ADA by retaliating against Plaintiff because of her protected activity. *See* 42 U.S.C. §§ 12112(b)(5)(B), 12203(a).

80. As a direct and proximate result of the Defendant's retaliation, Ms. Coles suffered and in some circumstances continues to suffer lost wages and benefits, reputational harm, increased medical costs, emotional distress, and physical pain and discomfort.

## **PRAYER FOR RELIEF**

IN CONSIDERATION OF THE PRECEDING, Ms. Coles respectfully requests that this Honorable Court order the following relief:

1. Declare Defendant's actions violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), 12112(b)(5)(B);

2. Enter Judgment against Defendant on all counts contained herein;

3. Award back pay, front pay, lost wages, and benefits;

4. Award compensatory damages in an amount to be determined by a jury;

5. Award punitive damages in an amount to be determined by a jury;

6. Award reasonable attorneys' fees and costs, pre-judgment interest, and post-judgment interest;

7. Grant such relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED**

Respectfully submitted,

**ROBERTA COLES**

Plaintiff

By: /s/ Paul M. Falabella
Craig Juraj Curwood (VSB No. 43975)
Paul M. Falabella (VSB No. 81199)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
craig@butlercurwood.com
paul@butlercurwood.com